WILLIAM WARNER *v.* LYMAN MOWER, SAMUEL W. PORTER, JONATHAN ATHERTON and MAJOR HAWLEY.

Private business corporations, by our statute, may convey real estate by the deed of their president, and such deed may be sealed with the seal of the president.

Such corporation, at the annual meeting, if there be no restriction in the charter or by-laws, may transact any business incident to the corporate interests.

Quære,—Whether a by-law of such corporation, requiring all meetings to be notified by the clerk in a particular manner, when it forms a portion of the article in regard to special meetings, and from its provisions would seem to have reference only to special meetings, should be construed to extend to the annual meeting?

And if such notice has reference to stated, as well as special meetings, Quære,—Whether a failure to comply with the formal part of the notice renders the business transacted at the meeting inoperative?

Held—That such notice of the annual meeting need not state the business to be transacted, as, the provision in regard to such meeting being general, it was, *ex vi termini*, for the transaction of all business, incident to the corporate power and interests.

THIS was an action of trespass, for taking certain articles of personal property, which, prior to the 20th day of April 1837, belonged to the Green Mountain Woolen Manufacturing Company. Issue to the court by agreement of the parties.

The plaintiff claimed title to the property in question, under a deed of assignment, bearing date on said 20th day of April, 1837, from Henry Hodges, as president of said company.

The defendants justified the taking by virtue of several writs of attachment in favor of creditors of said company, issued and served after the date of said assignment.

On the trial in the county court the plaintiff offered in evidence the said deed of assignment, conveying to him, in trust for the payment, first, of certain debts, and in the order therein mentioned, and afterwards, of all other debts of said company, all the real and personal estate and choses in action of said company, which deed of assignment was executed, on said 20th day of April, 1837, by said Henry Hodges, as president of said company; and sealed with his seal, and duly acknowledged and recorded on the same day, together with an acceptance under seal, by a portion of the creditors therein named and provided for,—but not inclu-

ding the defendants,—of the provision in said deed, made for their benefit, and a release by them, under seal, of their claims upon said company, to take effect upon the receipt by them of their just portion of said estate and property, according to the terms of said assignment. The said deed recited a vote of said company, passed at an adjourned meeting, holden, on the 19th day of April, 1837, authorizing the said president to make the conveyance to the plaintiff, in the manner, and for the purposes, in said deed, mentioned.

The plaintiff also offered, in connection with said deed, the charter, by-laws and records of said company. The charter provided for the first meeting and organization of the corporation, and further provided that, at that meeting and at all other meetings, legally notified, said corporation might make and alter such by-laws, rules and regulations, as might be necessary for the due regulation and management of said corporation, not repugnant to the constitution and laws of the state.

The records of the corporation showed a due organization under the charter, and the adoption, at a regular meeting, of a code of by-laws, the third article of which provided for an annual meeting of the company, on the first Wednesday of April, at which the officers of the company were to be chosen, by ballot, who were, by the fourth article, to consist of a president, a board of directors, not exceeding five, and a clerk, who were to hold their offices for one year, or until others should be chosen. The 5th article provided that special meetings might be called, by the president or board of directors, and that "all meetings of the company should be "notified by the clerk, by leaving at the usual place of busi- "ness of each proprietor, or addressing to him by mail, at "least ten days previous, a written notice of said meeting, "stating its general object."

The records further showed that an annual meeting was holden on the first Wednesday,—being the 5th day—of April, 1837, which, after the election of a president pro tem. was adjourned to the 19th day of the same April, on which last mentioned day, Henry Hodges was duly chosen, by ballot, president of the company, and the other officers of the corporation duly appointed, and that, at the same meeting, the

WINDSOR,
February,
1839.

Warner
v.
Mower et al.

vote, recited in the deed of assignment aforesaid, was duly passed, a majority of the members being present.

The plaintiff further offered, in connection with the foregoing, to show that the said annual meeting was notified by the clerk of the company, by leaving at the usual place of business of each member of the company, or by addressing to him by mail, at least ten days previous to said meeting, a written notice that the annual meeting of the stockholders of said company would be holden at their counting room, on Wednesday the 5th day of April, then next, at 10 o'clock, in the forenoon.

To the testimony, thus offered by the plaintiff, the defendants objected, and it was excluded by the court. To which the plaintiff excepted,—and after judgment for defendants the exceptions were allowed, &c.

*S. S. Phelps*, *R. Washburn* and *Aikens & Edgerton*, for the plaintiff, insisted.

I. That the president of the corporation was duly authorized to execute the deed of assignment;—and

II. That the plaintiff had a good title, under that deed, to the property in question.

*Williams & Tracy* and *D. Kellogg*, for defendants.

I. The decision of the county court should be sustained by this court, because,

1. Henry Hodges had no authority, by virtue of his office as president of the company, to make the deed of trust. It certainly is not among the ordinary duties of such an officer. It is not a power incident to his office.

2. Neither the charter nor the by-laws of the company empower the president to make such a disposition of their property.

II. The vote of the 19th of April, purporting to delegate authority to Hodges to make the deed, *was binding upon no one, concluded the rights of no one, but was wholly nugatory and void.*

1. As no notice was given of the meeting of the 19th of April, but its legality rested upon its adjournment from the 5th, it is supposed the most the plaintiff will contend for the meeting of the 19th is, that they could *then* legally do what they might have legally done on the 5th.

2. The meeting of the 5th of April, being the annual

WINDSOR,
February,
1839.

Warner
v.
Mower et al.

meeting, was notified to the stockholders as *the annual meeting simply*, without specifying or intimating that any particular business whatever was to be transacted.

3. They could not, under a notice of an annual meeting *simply*, legally transact any business, inasmuch as the 5th article of the by-laws requires that "all meetings of the company should be warned by giving notice to the stockholders of the object of the meeting."

4. Any notice, short of such as the by-laws require, is insufficient, and the proceedings under such a notice are void. *Stow* v. *Wise*, 7 Conn. R. 219.

It is true, that it is laid down in some of the books that, when a day is periodically appointed for a particular business, no notice is necessary, when that alone is to be transacted, or the *mere ordinary business* of the corporation, yet when the intention is to do other acts of importance, a notice is required.    Angell and Ames on Cor. 276.

This, however, is believed to apply only to those corporations, which have no by-laws or whose by-laws do not prescribe any *particular manner* in which their meetings shall be warned.

But suppose it be conceded, in the present case, that the meeting of the 5th of April—it being the day designated by the by-laws for the annual meeting—was a legal meeting for the purpose of doing the *particular business required* by the by-laws for those days, and all other *ordinary* business of the corporation, (and this, we believe, is all that could be claimed,) it will not aid the plaintiff.

1. The vote authorizing the conveyance to the plaintiff was not the *ordinary* business of the corporation, transacted at their annual meetings, but was business of an *extraordinary character*, of the greatest importance to every member of the company,—a vote authorizing a disposition of all the property of the company.

2. It was a vote authorizing a conveyance repugnant to principles of justice.

3. The charter and by-laws point out the election of the company officers as the business to be performed at the annual meeting, and they do not designate nor in any way refer to any other business to be performed at that time.

Inasmuch, then, as the vote, authorizing the conveyance to

the plaintiff, was not specified by the charter or by-laws, as business-to be transacted at the annual meeting, and the same not being among the *ordinary* business of the company, *it was illegal and void.* Angell and Ames, 276.

II. As a general rule, the by laws of a corporation, made in pursuance of their charter, and legally adopted, as long as they remain in force, become obligatory upon the corporation, and all their proceedings must be had in conformity to them, or they are illegal and void.

Inasmuch, then, as the meeting of the 5th of April was not warned pursuant to the by-laws, the vote passed, at the meeting, authorizing the conveyance, was void.

An exception, however, is admitted in case *all* the members of the corporation are assembled, without due notice, and all agree to enter upon the business. It is then a waiver of the notice, and the proceeding would be valid, unless the charter requires a special notice, in which case it cannot be dispensed with, even by unanimous consent.. Angell & Ames, 278. *Rex* v. *Theoderick,* 8 East. R 543.

But this principle of law cannot avail the plaintiff in the present case, inasmuch as the members were not all present at the meeting of the 19th.

In support of the foregoing positions, the court are referred to the following cases. *Kynaston* v. *Mayor &c. of Shrewsbury.* 2 Strange's R. 1051. *King* v. *University of Cambridge.* 2 Ld. Raymond's R. 1334. *King* v. *Theoderick,* 8 East's R. 545. *King* v. *Mayor &c. of Doncaster,* 2 Burrow's R. 744. *Stow* v. *Wise,* 7 Conn. R. 219. Angell & Ames, 276, 277, 278. *King* v. *Liverpool,* 2 Burrow's R. 735. 11 East's R. note to pages 86 and 87. 10 Com. Law R. 376.

IV. The deed of assignment was not duly executed.

1. It purports to convey the corporate property, and yet it is not executed in the name of the corporation nor under the corporate seal.

It is well settled, that, to bind a corporation, the deed must be in the corporate name and under the corporate seal. *Wood* v. *Tate,* 5 Bos. & Pull. R. 246. *King* v. *Chippen Norton,* 5 East's R. 239. *Randall* v. *Vanvechten,* 19 Johns.- R. 65. *Hatch* v. *Barr,* 1 Ohio R. 172. Angell & Ames, 109, 115, 168.

WINDSOR,
February,
1839.

Warner
v.
Mower et al.

REDFIELD, J.—In this case the plaintiff claims title to the property, by assignment from the Green Mountain Manufacturing Company, and the defendants by virtue of an attachment against the same company. Both parties were. bona fide creditors of the company, and the controversy is one of strict right. The deed of assignment is general, including all the property belonging to the company, and is made in the name of Henry Hodges, president of the company, and sealed with his private seal.

There can be no question, I apprehend, that corporations of this character, as well as natural persons, may assign their property for the benefit of creditors. And if they may do this, it follows, of course, that they may make such preferences, as any other debtors may. I shall, therefore, spend no time in speaking of the character of this assignment. If there is any well founded objection, in regard to its being so general, it must have been the evidence which results therefrom, that the preference was of a fraudulent character.. This is a question of fact, with which we have no concern here. The county court decided the assignment informal and void. This must have been upon the ground, either that the president had no authority to make such assignment, or that the deed was not in proper form.

The form of the deed, at common law, would not, probably, be considered good. A conveyance under seal should be sealed with the seal of the person or persons contracting, and not of the agent. Wilks v. Back, 2 East's R. 142. The. case cited in argument from the 1 Ohio Reports, is to the same effect. In the absence of any statutory provision upon the subject, I should myself incline to the opinion, that the president or agent, making a conveyance under seal on the behalf of a corporation, should affix the seal of the corporation. But the statute of this state expressly directs a conveyance in the present form. 1 Comp. Laws, 160. §3. "The deed of such president, reciting the vote of the corporation, shall be sufficient to vest a title in the purchaser." Here it is expressly provided that real estate of corporations of this character may be conveyed by the deed of the president. And so far as the personal estate is concerned, the conveyance was sufficient without the seal, either of the

president or corporation. So that the *form* of the conveyance would seem to be quite sufficient.

The authority of the president to make such conveyance depends altogether upon the vote of the corporation, at their annual meeting in the year 1837, held by adjournment from the day fixed by the by-laws. It is too well settled to require comment, that all corporations, whether municipal or private, may transact any business at an adjourned meeting, which they could have done at the original meeting. It is but a continuation of the same meeting. Whether the meeting is continued without interruption for many days, or by adjournment from day to day, or from time to time, many days intervening, it is evident it must be considered the same meeting, without any loss or accumulation of powers. *Schoff* v. *Bloomfield,* 8 Vt. R. 472.

It is to be borne in mind, too, that a manifest distinction obtains between general stated meetings of a corporation, and special meetings. I know that stated meetings may, nevertheless, be special, i. e. limited to particular business. But stated meetings of a corporation, are usually general, i. e. for the transaction of all business within the corporate powers. Unless the object of such meeting is restricted by express provision of the by-laws, it would ordinarily be understood to be general ; and so every corporator would be bound to understand it. But if the object of the meeting be limited by the by-laws, it is then a special meeting, and no other business could lawfully be transacted at such meeting, unless special notice was given. Where the meeting is stated and general, no notice is required, either of the time or place of holding the meeting, or of the business to be transacted. Angell & Ames on corporations, 275. Such is the general law of private corporations.

But as all corporations are entities of the law merely, and exist and act solely in conformity to their charter and by-laws, it is obvious that the force and effect of every act of any particular corporation must depend mainly upon the charter and by-laws of that corporation. These are denominated the constitution and laws of the corporation, and, like every other constitution and all other laws, should receive such construction, as to effect the probable intention of the framers. That intention must be judged of as in other

WINDSOR,
February,
1839.

Warner
v.
Mower et al.

cases, by the words used in reference to the subject matter and circumstances of each particular corporation.

The charter of this corporation provides for the first meeting of the corporation specially, and that at that meeting, and at all other meetings legally notified, they may make and alter such by-laws, as may be thought necessary. There being thus no restriction in the charter, in relation to meetings of the corporation, or the business to be transacted, that subject will be governed exclusively by the by-laws.

Those by-laws provide for an annual meeting of the corporation, to be holden at their counting room, on the first Wednesday in April, of each year. Thus far the time and place of the meeting is fixed, and there being no restriction in regard to business, any and all business, pertaining to the interest and powers of the corporation, may be transacted. The annual meeting, of all others, is the one when, not only usually, but always, *all* business is expected to be transacted. And the common custom of a country is of great force in the construction of statutes, as well as contracts.

But it is undoubtedly competent for the corporation to restrict the business to be done, and it is said this corporation have done so.

After the main body of the article, as above recited, is added " at which (meeting) the officers of said company shall be chosen by ballot." This clause, it is said, defines the business to be transacted, and nothing else can legally be done. If the meeting were special, this might be a fair construction. If a special meeting is called for a particular purpose, the corporators have a right to expect that nothing else could or would be done beyond the specified object. But not so, in regard to the annual meeting. This meeting is intended for general business. It would be monstrous and almost ludicrous to suppose, that any corporation would limit the business of the annual meeting to the mere choice of officers. And it is evident such was not the intention of this corporation. They have provided that the officers shall be chosen at this meeting. and in a particular mode, and left the object of the meeting general in other respects.

But there is no doubt, that a corporation might provide that even stated meetings should be warned in a particular

WINDSOR,
*February,*
1839.

Warner
*v.*
Mower *et al.*

manner, and that unless they were so warned, no business could be transacted. This, in regard to special meetings, is done in the present case, and I have no doubt, as such special meetings rest solely upon the notice given, for their authority, that the notice must be such as is required by the by-laws, or the meetings would be wholly without authority, and all business attempted to be then done, would be of no binding force upon the corporation. For the minority, if any, whether present or absent, could not be bound, except in obedience to the by-laws. For in that mode, and that only, have they consented to be bound. Every member is entitled to notice of special meetings unless the by-laws excuse it. *Kynaston* v. *Mayor of Shrewsbury,* 2 Strange's R. 1051. *King* v. *Theoderic,* 8 East's R. 543.   1 Strange's R. 385.   2 Burrow's R. 723.   do. 728.   *Stow* v. *Wise,* 7 Conn. R. 219.

But where the time and place and the object of the meeting are each fixed by corporate 'statutes, no further notice would seem to be required. In regard to special meetings it is required, and would seem to be indispensable to their existence. It is true that the phraseology is general " *all* meetings" of the company shall be notified by the clerk in writing, &c., ten days previous to the time appointed, stating the general object of the meeting.

1. This clause is a portion of the article in relation to special meetings.

2. From the nature, and character of its provisions, it could have reference only to special meetings. For why should the annual meeting, whose time and place and object were all fixed by the by-laws, be notified in this manner. It would seem to be purely a work of supererogation.

3. If we admit that the corporation intended to make this regulation in regard to stated meetings, and the annual meeting in particular, lest they should escape the memory, we still do not get rid of the absurdity to which the construction leads us. There was but one stated meeting of this corporation, and that the annual meeting. The time and place being fixed, the object universal, one would almost as soon forget the existence of the corporation as the annual meeting, and its object.

But if such a provision in the statutes of the corporation, in relation to the annual meeting, had been found in express terms, it should still receive the same construction which similar provisions do in legislative statutes.    When the statute is merely directory,—i. e. directs the manner of doing a thing, and is not of the essence of the authority for doing it,—a compliance with its requisitions is never considered essential to the validity of the proceeding, unless such is the expressed or evident intention of the legislature.

And in the present case, where, at most, the company have provided that the annual meeting shall be notified by the clerk, in a particular manner, and this as a mere remembrancer to the stockholders, it could hardly be supposed the company could have intended the meeting should fail for any defect in, or even want of notice.

But if we concede that the notice required was intended to apply as well to the annual, as to special meetings, and that without such notice in all its essential requirements, the meeting must fail ; still, it is evident that, in this case, the notice was sufficient.

The clerk here served a notice, in the manner required by the by-laws, upon each corporator in due time, stating the time and place of the meeting and that it was the annual meeting of the company.    This was certainly all the notice which could be given of the annual meeting.    As each corporator knew, that it was competent at this meeting to transact all business pertaining to the corporate interests, the very term, annual meeting, was, *ex vi termini,* notice to that effect ; and it could have answered no good purpose to repeat this in the notice.    So that, in whatever light this case is viewed, it is evident the testimony which was rejected by the county court, viz. the vote and proceedings of this meeting should have been received.    Their judgment must, therefore, be reversed, and the case remanded for a new trial.

Collamer, J., dissenting.