The Commonwealth Company v. C. J. Brown, *as Clerk of the Supreme Court of Kansas.*

Official State Paper, *Duly Designated.* Under the statutes of Kansas an executive council is created, consisting of six members, to wit, the governor, secretary of state, auditor, treasurer, attorney general, and superintendent of public instruction. This council is required to meet in regular session on the last Wednesday of each month; and at its regular meeting in March of each year it is required to designate some newspaper printed and published at Topeka as the official state paper; and such paper so designated becomes "the official state paper for and during one year from the first day of April next ensuing," and it continues to be such official state paper until its successor shall in like manner be designated. Four members of the council constitute a quorum for the

transaction of business, but no question can be decided except by the concurrence of at least four members. At the regular meeting of the executive council in March, 1881, the *Daily Commonwealth* was designated as the official state paper for the ensuing year, and it became such and continued to be such during that year. At the regular meeting of the executive council in March, 1882, four members only were present; and without transacting any business, the council adjourned until April 5, 1882, at which time the council met, and designated the *Daily Capital* as the official state paper for the ensuing year. *Held,* That the designation was legal; that in the absence of statutory or constitutional provisions limiting or restricting the right of adjournment, every body of men, whether public or private, has the right to adjourn from day to day, or from time to time, and for any number of days at any time, as it thinks proper and expedient, and the validity of its adjournments cannot be inquired into by any other tribunal; and such body of men may transact any business at the adjourned meeting which it could have transacted at the regular meeting; and *further held,* that the executive council, at its regular meeting in March, 1882, had the right to adjourn from day to day, if it had so chosen, or to adjourn to the 5th of April, 1882, as it did, and that at its meeting on April 5, 1882, it had the power to do any business that it could have done at its meeting in March; and that its designation of the *Daily Capital* as the official state paper for the ensuing year was valid; and the *Daily Capital* became the official state paper on April 5, 1882, for the term commencing on the first day of April, 1882, and ending in one year thereafter.

## Original Proceedings in Mandamus.

ACTION brought originally in this court, April 7, 1882, by *The Commonwealth Company,* to compel the defendant, *C. J. Brown,* as clerk of the supreme court of the state of Kansas, to deliver to the plaintiff, for publication in the *Daily Commonwealth,* a daily newspaper published at Topeka, Kansas, copies of the official *syllabi* of the decisions of the supreme court. The defendant duly filed his answer May 2, 1882. The facts sufficiently appear in the opinion, filed at the sitting of the court in June, 1882.

*Leland J. Webb,* and *D. E. Sowers,* for plaintiff:

1. The executive council has only such powers as are expressly given by law. (Comp. Laws 1879, ch. 102, § 97.) It was the duty of the executive council at its session in March, 1882, to designate a successor of the *Daily Commonwealth* as

the official state paper. (Sec. 104.) In other words, such successor should have been elected at that time. It is essential to the validity of such election that it be held at the time and in the place fixed by law for that purpose. (McCrary on Elections, §§ 109, 185; *Dickey v. Hulburt,* 5 Cal. 343, and cases cited.)

The executive council has no power to "adjourn" and to hold "adjourned sessions." We do not contend that it cannot adjourn from day to day, when it has duly met on the day fixed by law, and (a quorum being present) it has entered upon its usual and ordinary business, and has been unable to complete the same upon that day. It may then, *ex necessitate,* adjourn the sitting over until the next day. In such cases the adjournment, so called, would be like the adjournment of a court from day to day. It would not be an adjournment in fact, but only a recess, and like the proceedings of a court running through several consecutive days, the proceedings of the executive council would be deemed to have been had and taken on one day only, and that day the day fixed by statute for the commencement of the session.

The supreme court and the district courts hold adjourned sessions only because authorized by statute. (Comp. L. 1879, ch. 27, § 2; ch. 28, § 29.) So too, with the board of county commissioners. (Comp. L. 1879, ch. 25, §§ 13, 39*a*.) So also with the city council, whose regular meetings shall be held not less than once each month. Clearly, the executive council, whose monthly business is usually transacted in a few hours, does not possess as an inherent power that which this court possesses only by force of the statute. The executive council does not possess the power to adjourn, like the county commissioners and the city council, because that power exists only by statute, and it is given to the two latter, but not to the former. But there was no necessity for an adjournment from the 29th of March to the 5th of April. The proceedings of the executive council show that four members were present on the day fixed by law, March 29th, namely, the governor, auditor of state, attorney general, and secretary of state.

No business was transacted or even proposed at that meeting except simply the motion and order to adjourn, "to meet in adjourned session on Wednesday, April 5th, 1882, at 10 o'clock A. M.," and that "the secretary be directed to notify the absent members." The council, therefore, was in legal session on the day fixed by law for designating the official state paper. It adjourned for one week. For want of power so to do, the adjournment was in contemplation of law an adjournment without day. (24 Kas. 223, 225.)

2. The statute not only does not authorize, but it does not contemplate, any adjournment. It provides for a regular session, once in each month, and designates the day. It provides that special sessions may be called at the request of any two members, thus providing for any emergency which might arise intermediate the regular monthly meetings. Suppose there had been occasion for the council to act upon some question on the third day of April, a special meeting could have been called and held; then how can it be said that on the 5th of April the regular session appointed for *March* could be held? The executive council may meet in special session as occasion may require, at the request of two members. (Comp. Laws 1879, ch. 102, § 90.) It shall have and exercise certain powers and perform certain duties. (Secs. 89 to 96 inclusive.) It shall have and exercise such other powers and perform such other duties as may be prescribed by law. (Sec. 97.) Now unless there is some statute authorizing the adjourned session of April 5, the session held that day was a nullity. (Cooley's Const. Lim. 88.) But if valid for any purpose, the attempted designation of an official state paper at that time for the year commencing April 1, was illegal and void because the council only had power to make such designation at its *regular meeting in March*. (Sec. 104.) No meeting or session *held in April* can be a "regular meeting" *held in March*. If a state paper could have been legally designated for the present year at a meeting held April 5, such action could have been taken at the regular session held on the last Wednesday in April; and if it could

have been taken then, it can be taken thereafter at any time notwithstanding the plain language of the statute. Again, when legally designated, the term commences on the first day of April next ensuing such designation. Clearly, the *Daily Capital* cannot be the official state paper before the first day of April, 1883, that being "the first day of April next ensuing" the date of designation; and it is just as reasonable to say that the executive council could, on the 5th of April, 1882, have designated an official paper for the term commencing April 1, 1883, as that it could have designated such state paper on the said 5th day of April, 1882, for the term commencing April 1, 1882.

3. The only power given to the executive council to designate an official paper at any time other than at its regular meeting in March, is found in said § 104, and that is, in case the official paper shall be discontinued, or shall not be promptly and regularly issued and published, the executive council may designate some other paper as the official paper for the unexpired year.

Now the fact that the statute fixes the official term as beginning April 1, and the further fact that provision is made in certain cases for the unexpired year, adds force to the claim that the regular election or designation must be in March *before* the commencement of the official year. If the council, therefore, could designate an official paper at all on the 5th day of April, or at any other time after the commencement of the term, such designation must be for the unexpired term only; and the power to so designate for the unexpired term can be exercised only when there is an actual vacancy, or such a state of affairs as will authorize the council to declare a vacancy. It is not claimed that there was a vacancy April 5th, or that such a state of affairs existed at that time as would authorize the council to declare a vacancy.

*J. D. McFarland,* for defendant:

Plaintiff's position is sought to be maintained on two grounds: First, that the executive council had no power to

adjourn from March 30th to April 5th, and that said adjournment of March 30th operated as an adjournment without day; second, that the executive council had no power to designate an official state paper after April 1st.

With respect to the first proposition, it is not claimed that the executive council could not adjourn from day to day, if the exigencies of its business demanded, and thereby remain in session during the entire time intervening between the dates fixed for its regular monthly meetings, but that it could not, if a like exigency demanded, adjourn over for a day or a week and then meet and continue its regular session.

No reason is given why such adjournment is illegal, except that the executive council is a board created by statute for the transaction of certain business affairs of the state; that it is authorized to hold regular and special meetings, and that no express authority is given it by statute to hold adjourned meetings. It is contended that this, or any other similar body, has no implied power to adjourn to a future fixed time; that a city council or a board of county commissioners can hold adjourned sessions only because authorized by statute; but no provision of statute expressly authorizing such adjourned sessions is pointed out, and none in fact exists. It has long been the universal usage for such bodies to hold adjourned sessions, and unless expressly prohibited by statute, they may legally do so. (Dillon on Mun. Corp., 3d ed., § 287, and cases cited; *People v. Green*, 75 N. C. 329; 47 Tex. 90.)

Courts have the same power, independently of statutory provisions. (20 Ill. 107; 26 Ga. 275; 4 Neb. 277; 8 Kas. 351.) It is a general rule, applicable to all bodies, boards, electors, corporators and meetings which may lawfully assemble, that when once met in regular session, they may adjourn the meeting to a future fixed time, unless expressly prohibited by statute, and then meet and continue the business of the regular session. (Dillon on Mun. Corp., 3d ed., § 269, and cases cited; 13 Me. 466; 5 N. Y. 22.)

*In re Millington*, 24 Kas. 223, cited in brief of plaintiff's counsel, has no application to this question. The contention

then was, not whether a court could adjourn, but whether a district court could be in session in two counties of the district at the same time.

It is further contended that such designation cannot be made after April 1st, because the statute provides that the designation shall be made at the regular meeting in March, and shall be for one year from the first day of April next ensuing. By the regular meeting in March is intended the regular monthly March meeting, and not a regular meeting to be holden in the month of March, and if such meeting could be legally adjourned to April 5th, the designation could properly be made on that day. The fixing of the time during which such newspaper should be the official state paper, is incorporated into the statute for the purpose of prescribing the time when the paper shall cease, by virtue of said designation, to be such official state paper. Evidently it was not intended that it should be essential to being an official state paper at all, that such paper enter upon its duties on the first day of April, and at no other time. It may become such official paper at any time; but no matter when it enters upon its duties as such, its time expires on the first day of April next thereafter. This is apparent from the provision made for filling the *hiatus*, which was liable to occur at any time, by reason of a successor not being able to take the place on the first day of April, and also by the other provision, that when a change should be made in the official paper during the year, for cause, the paper then designated should fill the place only until April first next thereafter; and if such paper could enter upon its duties at no other time than the first day of April, then the holding over would be for another year —as long as the designation was originally made for. If such had been the intention, the legislature would certainly have used language different from that embodied in the statute.

But if the statute expressly provided that the designation should be made in the month of March, such provision would not be considered mandatory. The rule is, that, unless a fair

consideration of the statute shows that the legislature intended a strict compliance with its provisions respecting time and manner to be essential to the validity of the proceeding, such provisions are held to be directory merely, and may be disregarded. (1 Kas. 279; 9 id. 587; Sedg. Stat. Const. 369 *et seq.*)

The opinion of the court was delivered by

VALENTINE, J.: This is an action of mandamus, brought originally in this court by the Commonwealth company, for the purpose of compelling the defendant, C. J. Brown, as clerk of the supreme court of the state of Kansas, to deliver to the plaintiff for publication in the *Daily Commonwealth*, a daily newspaper published at Topeka, Kansas, the official *syllabi* of the decisions of the supreme court. The facts of the case are such that the only substantial question involved in the case is, which of the two newspapers, the *Daily Commonwealth*, or the *Daily Capital*, is the "official state paper" of the state of Kansas. The statutes of Kansas provide among other things as follows:

"SEC. 89. An executive council is hereby created, consisting of the governor, secretary of state, auditor, treasurer, attorney general and superintendent of public instruction, a majority of whom shall constitute a quorum for the transaction of business; but no question shall be decided without the concurrence of at least four members. The governor, or in his absence the attorney general, shall preside over the meetings of such council; the secretary of state shall be the secretary of the executive council, and shall keep a journal of its proceedings.

"SEC. 90. The executive council shall hold their meetings in the office of the secretary of state, and shall meet in regular session on the last Wednesday in every month, and in special session at such other times as occasion may require, at the request of any two members: *Provided,* That any official bond required of any state officer who is a member of the executive council shall be approved by the governor."

"SEC. 104. The executive council shall, at their regular meeting in March of each year, designate some newspaper, printed and published at Topeka, as the 'official state paper,'

and shall certify such designation to the secretary of state, who shall file and record the same. The paper so designated shall be the official state paper for and during one year from the first day of April next ensuing, and until its successor shall in like manner be designated; but if such newspaper be discontinued, or shall not be promptly and regularly issued and published, the executive council may appoint or designate some other newspaper, published at the capital, as the official state paper for the unexpired year." (Comp. Laws 1879, pp. 904, 908.)

The statutes also provide that the clerk of the supreme court shall publish the official *syllabi* of the decisions of the supreme court in the official state paper. (Comp. Laws of 1879, p. 316, § 10; p. 908, § 105.)

Among the admitted facts of the case are the following:

At the regular meeting of the executive council, on March 30, 1881, such council duly designated the *Daily Commonwealth* as the official state paper for the ensuing year. The *Daily Commonwealth* was at that time owned and published by F. P. Baker & Sons. On April 1, 1881, the present plaintiff, the Commonwealth company, a corporation of which F. P. Baker and sons are members, purchased such newspaper from F. P. Baker & Sons, and have published the same ever since; and from the 1st day of April, 1881, to April 5th, 1882, the *Daily Commonwealth* was the official state paper of the state of Kansas. On March 29, 1882, the same being the last Wednesday in March of such year, and being the time for holding the regular meeting of the executive council in that month, the executive council met in regular session, a quorum of four members being present; and thereupon the council adjourned to meet again on April 5, following. On April 5, the council met pursuant to adjournment, and designated the *Daily Capital* as the official state paper for the year ending March 31, 1883. This last-named designation, as well as the first, was duly certified to the secretary of state, and the publishers of the *Daily Capital* accepted such designation. Both of these newspapers are now, and have been for a long time, promptly and regularly printed, issued and published in the city of Topeka.

These are substantially all the facts in the case; and upon these facts the plaintiff claims that there has been no valid designation of any official state paper since the *Daily Commonwealth* was so designated, on March 30, 1881; and there- fore that the *Daily Commonwealth* still remains the official state paper, under that clause of said § 104 which provides that the official state paper shall remain such until its suc- cessor shall be duly designated.

The plaintiff insists that the action of the executive coun- cil in designating the *Daily Capital* as the official state paper was utterly null and void. This is claimed upon the follow- ing grounds, to wit:

*First.* That the executive council has no power to adjourn its meetings, except from day to day, and then only when the amount of its business and the exigencies of the occasion require such an adjournment; and that there was really no necessity for any adjournment of its meeting held on March 29, 1882.

*Second.* That even if the executive council has the power to adjourn its meetings to some future time, still, that it can- not so adjourn its power or authority to designate the official state paper as to make such a designation at some future time valid; and that any such designation made at any time after the first day of the regular meeting of the executive council in March, and while the previously-designated official state paper is still properly performing its duties, is utterly null and void.

*Third.* That even if the executive council could designate an official state paper after the first day of the regular meet- ing of such council in March, still, that such designation could not take place after the first day of April following, unless in fact there was no official state paper in existence at the time of such designation, or unless such official state pa- per was not promptly and regularly issued and published.

We think the plaintiff is mistaken in every particular. In the absence of statutory or constitutional provisions, limiting or restricting the right of adjournment, every body of men,

whether public or private, has the right to adjourn from day
to day, or from time to time, and for any number of days at
any time, as it thinks proper and expedient; and the validity
of its adjournment cannot be inquired into by any other tri-
bunal. This is not only the general understanding of all
classes of men, but the universal custom of all classes and
bodies of men with reference to adjournments corresponds to
this general understanding. With reference to corporations,
Mr. Field, in his work on Corporations, says that "It is a
general rule that corporate meetings may be adjourned; and
if a corporate meeting is regularly called, any business that
might have been legally transacted at the original meeting
may also at the adjourned meeting. This is also in accord-
ance with the general rule of parliamentary proceedings.
. . . . In the absence of particular regulations on this sub-
ject, the power to adjourn corporate meetings is an incidental
common-law right, and adjournments may be made in the usual
way to any future time the same day or any other day, and even
to another place than the one where it originally met, if within
the territory of its creation." It is also said in the case of
*Warner v. Mower*, 11 Vt. 385, 391, that "It is too well set-
tled to require comment, that all corporations, whether muni-
cipal or private, may transact any business at an adjourned
meeting which they could have done at the original meeting.
It is but a continuation of the same meeting. Whether the
meeting is continued without interruption for many days, or by
adjournment from day to day, or from time to time, many days
intervening, it is evident it must be considered the same meet-
ing without any loss or accumulation of powers." Also, upon
the same subject, see 1 Abbott's Digest of Corporations, p. 460,
No. 51, *et seq.;* 1 Dillon on Municipal Corporations, 3d ed.,
§§ 269, 287. With reference to elections, see McCrary on
Elections, pp. 109, 110, §§ 91, 92; and with reference to courts,
see Jacobs's Law Dict., title, "Adjournment;" *Revel v. The
State*, 26 Ga. 275; *Smith v. The State*, 4 Neb. 277, 284. In
the case last cited, it is said that "There can be no doubt
that, in the absence of a prohibitory statute, the district court,

when in actual session, may be adjourned by the judge to any time he may see fit, not beyond the next regular term for that county; provided it do not interfere with a regular term in any other county in his district. We regard this as one of the inherent powers of the court, to be exercised at the pleasure of the judge." And as before intimated, the reasons for adjournment cannot be inquired into. It will be presumed that they are sufficient. In the present case, under said § 89 of the statute, it required four members of the executive council to designate the official state paper. Now as there were only four members present at the original meeting on the 29th of March, it is possible that no designation of any paper could have been made, because it is possible that the four could not agree upon any particular paper. Each separate member of the council may have desired to designate a different paper. Besides, the council may have desired to obtain further information with respect to the circulation of the different papers published in Topeka; or it may have desired to know whether they were all of a permanent character and likely to be published during the year. At least the executive council may have had ample reasons for adjourning over to April 5; but whether it had or not, it is not for this court to inquire. And if the executive council had the power to adjourn then, as is shown by the authorities already cited, it had the power to transact any business at the adjourned meeting which it could have transacted at the original meeting. But it is contended that even if the executive council has the right to adjourn, and has the right to designate the official state paper at an adjourned meeting, still that the designation cannot be had at an adjourned meeting held after the first day of April, for the reason that the statute provides that the designation shall be at the regular meeting in March, and shall be for one year from the first day of April next ensuing. Now the statute does so provide; but by using the words "regular meeting in March," it evidently means the regular March meeting. It means that the designation must take place at the regular March meeting, and not that it must take place in March.

And if the designation does take place at an adjourned meeting of the regular meeting in March, it in legal contemplation takes place, as we have already seen from the authorities, at the regular March meeting. All lawyers are familiar with a similar use of language; judgments are often rendered at the March term, which are in fact rendered in April. In this court, all judgments rendered from January till July are said to be rendered at the January term; and all judgments rendered from July till January are said to be rendered at the July term. And further, the statute does not say in terms that the paper designated shall be the official state paper for one year from the first day of April next ensuing the designation; but it does say in substance that it shall be the official state paper "for and during one year," that is, for the period or term of one year from the first day of April next ensuing the regular meeting; that is, next ensuing the time when the regular meeting commences. This clause of the statute is simply intended to fix the *term* or the *period* for which the newspaper shall be the official state paper, and is not intended to fix a limitation upon the appointing power or designating power of the executive council. It means that the term of the official paper shall be one year, and that the term in the abstract shall commence on the first day of April of each year. But it does not require that the actual term of any particular official state paper shall commence on the first day of April, or not at all. It is seldom, if ever, necessary that an officer shall qualify and take possession of his office on the very day on which his term, in the abstract, commences; but he may allow, if he chooses, his predecessor to fill a portion of his term; and he may then take possession of the office and hold the same for the remainder of his term. A few days at the beginning of a term is a very unimportant matter. It makes but little difference to the state or to any one else, whether the term of a particular paper should commence on the first day of its term, or on some subsequent day; whether it should commence on the first day of April, or on the fifth

Commonwealth Co. v. Brown, *as Clerk, &c.*

day of April. The legislature, in passing the statutes above quoted, intended that the term for which a paper should be the official state paper should be just one year, and not two years or a longer period of time. But suppose, from some insuperable difficulty in the designation of an official state paper, that the one designated cannot commence its term on the first day of April, but must commence the same four or five days afterward, and therefore that it cannot take the term for the full year, but must necessarily take it for a period of time four or five days less than a year: is that a sufficient ground for holding that such paper shall not be the official state paper at all, but that another paper, which has been the official state paper for the preceding year, shall continue to be the official state paper for still another year, and thereby be the official state paper for a term of at least two years? Which is the less irregularity, which is the less violation of the will and intention of the legislature, and which is the less violation of the spirit of the law? Is it less in harmony with the will and intention of the legislature, that an official state paper should be such for five days less than a year, than it is that an official state paper should be such for a term of two full years? Evidently the object of the law would be better subserved, both in letter and spirit, by holding that if the executive council cannot or does not, for any reason, designate the official state paper on the first day of its regular meeting in March, then that it may designate such paper on some other day of such meeting, although it may be on some day in the month of April. Of course, that provision of § 104 which says that the official state paper shall continue to be such until its successor is duly designated, must have some room for operation; but is it not more reasonable to say that it shall have room for operation, (where the executive council has failed for a few days to make the designation,) by its (the provision) continuing the old official state paper in its official position for such few days only, than it is to say that upon such a contingency the old official state paper shall be continued in its official po-

sition for still another year?  Suppose that, when the executive council met at its regular meeting on March 29, 1882, three of the members present were in favor of designating some particular paper as the official state paper for the ensuing year and that the other member present was opposed, and that it was impossible to obtain the presence of the two absent members on that day, or on any day prior to April 5, 1882, and that for these reasons it was impossible for the executive council to designate the official state paper for the ensuing year earlier than April 5, 1882: then should it be held that the executive council was powerless for that year, and for the whole of the ensuing year, to elect or designate an official state paper for such year, and thereby allow the old official state paper to hold the position for still another year, although all the members of the executive council except one may have been in favor of designating another official state paper, and of designating one and the same paper as the official state paper?  It must be remembered that it takes four members of the executive council to designate the official state paper.  Three cannot do it, although four only of the members may be present.  See said § 89.

There is no statute in force in this state prohibiting the executive council from adjourning from day to day or from time to time, and for any length of time which it may choose; and hence, upon general principles of law and in accordance with universal custom, it must have such power.  Of course it cannot adjourn beyond the next regular meeting, but that is probably the only limitation upon its power to adjourn. Section 90, above quoted, provides *when* the executive council shall *meet* and *where* it shall *hold* its regular sessions, but there is no law providing when its sessions shall terminate. Said § 90 provides that "the executive council shall *hold* their meetings in the office of the secretary of state, and shall *meet* in regular session on the last Wednesday in every month." Now if the legislature had intended that the executive council should hold its sessions only on the last Wednesday in each month, instead of using the language that it did use it would have used language in substance as follows: "The

7 — 28 KAS.

executive council shall *hold* its meetings in the office of the secretary of state, and its regular sessions on the last Wednesday and on the last Wednesday only, in every month." Taking this section of the statute together with all the other sections of the statute, and in connection with the general principles of law and the universal custom, we think the executive council, when it met on the last Wednesday of March, 1882, had the right to adjourn as it did to April 5, 1882; and then had the right as it did to designate the official state paper for the ensuing year, the term of such official state paper to be considered as commencing on April 1st, of that year.

It is probably unnecessary in this case to mention the doctrine of relation; and yet, we might say that when a designation of an official state paper is had at an adjourned meeting of the regular March meeting, such designation will probably relate back, so far as it is necessary for the purpose of rendering everything regular and legal and valid, to the first day of the regular meeting begun and held in March. All lawyers are familiar with the doctrine of relation. At common law, a judgment rendered at any time during the term relates back and has force and effect as from the first day of the term; and all orders and judgments made or rendered *nunc pro tunc* relate back to some previous time; and all sheriff's deeds relate back to the time when the plaintiff first procured his lien upon the property conveyed by the sheriff's deed. These are mere illustrations of the doctrine of relation, and are sufficient for the present purpose.

We think the action of the executive council on April 5, 1882, in designating an official state paper, was legal and valid, and therefore that the judgment in this case must be rendered in favor of the defendant and against the plaintiff; and it is so rendered.

All the Justices concurring.