A. J. COLE, Respondent, v. CHAS. L. YANCEY, Appellant.

Kansas City Court of Appeals, May 6, 1895.

1. **Fraudulent Conveyances**: FICTITIOUS INDEBTEDNESS: EVIDENCE. In a replevin suit for a stock of goods, a defendant answered that plaintiff's title was through a certain mortgage which was made fraudulently and without consideration, etc. At the trial he offered to prove by one of the grantors in the mortgage that no true debt existed between the parties and the amount contained in the mortgage was nearly double the genuine debt. *Held*, such evidence was properly admissible.

2. ————: ————: EFFECT. A false statement of the consideration of the mortgage or the creation of a fictitious indebtedness, is a badge of fraud, and bears on the *bona fides* of the transaction, some cases

holding it conclusive of fraud. The better doctrine that it is *prima .facie* fraudulent as to other creditors and, unless shown to be unintentional or accidental and free from fraud, the mortgage became void.

3. Interest: NEW CONTRACT. Certain notes, executed when statutory rate of interest was ten per cent., were subsequently, after the rate was changed to eight per cent., secured by a mortgage in which, as a consideration for security, it was agreed that the time for the payment of the notes should be extended one day. *Held,* that the mortgage was not made to secure notes bearing usurious rate of interest and the agreement to extend the time did not in any other way affect the validity of the notes.

*Appeal from the Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

*George Robinson, D. D. Duggins* and *Boyd & Murrell* for appellant.

(1) The notes referred to in the deed of trust were past due, and the stipulation in the deed of trust that the time of their payment should be extended to the fifteenth day of November, was a new contract, and an obligation to pay, from the date of the deed of trust, interest above the legal rate, to wit, ten per cent., on over $10,000. The interest exacted by this contract was usurious, being in excess of eight per cent. See Acts, 1891, page 171; *Staver v. Missimer,* 6 Wash. 173; 36 Am. St. Rep. 144. That this contract was a new one, and virtually a discharge of the old contracts (notes), is well settled law in this state. *Moore v. Bank,* 22 Mo. App. 684; *Stillwell v. Aaron,* 69 Mo. 539; *Wild v. Howe,* 74 Mo. 551; *Williams v. Jensen,* 75 Mo. 681; *Ins. Co. v. Hauck,* 83 Mo. 21; *Ins. Co. v. Hauck,* 71 Mo. 465; *Savings Ass'n v. Helmrick,* 57 Mo. 100; *McDonald v. Beer,* 60 N. W. Rep. (Neb.) 868; *Webb v. Bishop,* 7 S. E. Rep. (N. C.) 698. (2) The court erred in refusing to permit defendant to prove by E.

G. Burns, that the firm of Miller & Burns was not indebted to A. N. Schuster & Company in the amounts set out in the deed of trust, and to show by him that the whole transaction was fraudulent and void. He was a competent witness. See R. S., sec. 8918 and 8920. Not only a competent witness, but he, being one of the parties charged with fraud in making the deed of trust, it was plaintiff's duty to have him present for cross-examination. *Baldwin v. Whitcomb*, 71 Mo. 658; *Henderson v. Henderson*, 55 Mo. 559; *Cass County v. Green*, 66 Mo. 573; *Goldsby v. Johnson*, 82 Mo. 605; *Maberry v. McClury*, 74 Mo. 591; *Hedrick v. Beeler*, 110 Mo. 100.

*Leslie Orear* and *Samuel Davis* for respondent.

(1) The notes described by the deed of trust read in evidence were, at the time of the making of the deed of trust, valid subsisting demands, and the liability of the makers undisputed. The effect of the deed of trust was not to create new obligations, but to extend the time within which the debt could be paid. See, to this effect, *North v. Walker*, 66 Mo. 453, *loc. cit.* 463. (2) The rejected testimony of E. G. Burns was properly excluded by the court, and the offer of proof was properly refused by the court. The appellant should not only have offered a competent witness, but must show that the evidence was competent. We concede that Burns was a competent witness, but the evidence offered was incompetent. It clearly appears from the offer of proof made by appellants, as shown by the abstract, that the witness Burns knew nothing about the execution of the deed of trust, or that it was to be executed, and that he got his information from representations made to him by some other person, not claimed by him or appellant to be either Miller or any-

one representing A. N. Schuster & Company. The offer of proof was clearly contradictory of his testimony previously given, and it was hearsay. Even if it should appear that the representations were made by Miller to Burns, they would have been incompetent to impress the plaintiff's title. *Albert v. Besel,* 88 Mo. 150; *Gordon v. Ritenour,* 87 Mo. 54; *Shoe Co. v. Casebeer,* 53 Mo. App. 640. Wherefore, we respectfully ask that the judgment of the circuit court be affirmed.

GILL, J.—On and prior to November, 1893, J. J. Miller and E. G. Burns, under the firm name of Miller & Burns, were engaged in merchandising at Slater, Missouri. They were then indebted to Voorhies & Company, of Cincinnati, for goods purchased, in the sum of $3,000, and to A. N. Schuster & Company, of St. Joseph, in a large sum, on promissory notes past due. On said November 3, Miller, for the firm of Miller & Burns, executed a deed of trust on the stock of goods at Slater to plaintiff Cole, as trustee, to secure payment of some ten past due promissory notes, made to Schuster & Company by said Miller & Burns. In said deed of trust it was recited that, "for and in consideration of the execution thereof, the payees of said notes hereby agree to, and do, extend the time for the payment of the same until the fifteenth day of November, 1893."

Under this deed of trust, plaintiff Cole took immediate possession of the goods covered thereby; and within a few days thereafter, Voorhies & Company sued Miller & Burns by attachment, and had the defendant sheriff levy on the goods, so taken by and in the possession of Cole, as the property of Miller & Burns. Plaintiff Cole thereupon brought this action of replevin and took said goods from the possession of the defendant sheriff.

At the close of the evidence, the court peremptorily

instructed the jury to return a verdict for plaintiff, which was done, and from a judgment thereon, defendant has appealed.

I. From the foregoing statement, it will be seen that the real parties to this controversy are the two opposing creditors of Miller & Burns, to wit, Schuster & Company, claiming under a chattel mortgage, or deed of trust, executed November 3, 1893, and for whose interest the plaintiff stands; and Voorhies & Company, the attaching creditors, whose claim is represented by defendant sheriff. Hence it is that plaintiff's title and right of possession to the goods in question depends on the validity of said chattel deed of trust.

In the answer it was alleged that plaintiff's only title or right of possession was in and through said chattel deed of trust, and that it "was made by the said Miller & Burns for the fraudulent purpose of hindering, delaying and defrauding the creditors of the said Miller & Burns; that said Miller & Burns were not indebted to the said A. N. Schuster & Company in the amount described in said deed of trust; and that said deed of trust was without consideration and fraudulent and void as to the creditors of the said Miller & Burns."

At the trial of the cause, defendant called E. G. Burns (of the firm of Miller & Burns) as a witness, and sought to prove by him, in substance, that several of the ten notes included in the deed of trust of Miller & Burns to Schuster & Company did not represent a genuine indebtedness; that they had been paid off by renewals; and that both originals and renewals were by collusion between Miller and Schuster & Company retained by said Schuster & Company and all inserted in the deed of trust, thereby doubling the real debt and holding out Miller & Burns as owing Schuster & Company the aggregate sum of $9,000, whereas there was only half that amount. The trial court sustained an

objection to this evidence and refused to allow the witness to testify to facts of the foregoing import.

The exclusion of the evidence so offered was clearly erroneous. It is well settled law, that "a false statement of the consideration of a mortgage, or of a conveyance or transfer, or the creation of a fictitious indebtedness, is a badge of fraud, and is a proper element for the consideration of the jury in determining the *bona fides* of the transaction." Wait on Fraud. Conv. [2 Ed.], sec. 228. Jones on Mort. [4 Ed.], sec. 620; *State ex rel. Robertson v. Hope*, 102 Mo. 410.

Some of the cases have gone so far as to hold such false recital to be conclusive evidence of fraud. The better doctrine, however, seems to be that such exaggeration or overstatement of the amount of the debt secured is *prima facie* fraudulent as to other creditors— such as to call upon the holder of the mortgage for explanation; and, unless such misstatement is shown to be unintentional or accidental and free from a fraudulent design, then the mortgage will be held as fraudulent and void. And in case a portion of the recited debt is found to be fictitious and fraudulent, then the whole becomes tainted and the mortgagee will lose security for the entire claim—for the genuine as well as for the false. See cases cited in Wait's Fraud. Conv., *supra;* and in opinion of court in *State ex rel., etc., v. Hope, supra.*

This issue was directly raised by the answer and the court should have allowed the defendant to introduce proof thereof.

II. We discover no merit in the remaining point made in defendant's brief, viz.: that the mortgage given to secure the claim of Schuster & Company is void on its face, because made to secure notes bearing an usurious rate of interest. It is true that most of the notes call for ten per cent. interest, but, as such rate was

legal at the date of the execution of the notes, then clearly the subsequent act of 1891, reducing the legal rate to eight per cent. would not affect said notes. This, defendant admits, but it is contended that, by force of the extension of time, made in the chattel deed of trust in November, 1893, the notes became obligations of that date and therefore subject to the provisions of the statute passed in April, 1891.

The position can not be maintained. The notes were executed when the statute provided that "the parties may agree in writing for the payment of interest not exceeding ten per cent. per annum, etc." In 1891, this statute was amended by inserting *eight* instead of ten per cent. The force of this statute, as amended, was to inhibit the making of contracts in the future for the payment of more than eight per cent. interest. The effect of the provision in the deed of trust was not to make any new contract with reference to the rate of interest, nor did it bring about the substitution of a new for an old contract. Said stipulation amounted to nothing more than a partial modification of the terms of the old notes relating to the date or dates of payment. The rate of interest was left as originally provided in the notes. The parties in 1893 (when the deed of trust was executed) merely agreed on a suspension of the right to enforce the notes to a future date, and it is clear that they might do this without further change, or in anyway affecting their validity. *North v. Walker*, 66 Mo. 453, 463; *Stillwell v. Aaron*, 69 Mo. 542, 543. The question of usury, then, is not in this case.

For reasons first stated, however, the judgment will be reversed and cause remanded. All concur.