THE STATE ex rel. LANGE, Appellant, v. A. F. SHAPLEIGH HARDWARE COMPANY et al.

**Division One, December 23, 1898.**

**Corporation:** PRIVATE DEBT OF MEMBERS: FRAUD. Where the president of a mercantile corporation executes his private note to a bank to secure his private debt, and afterward in renewal of this private debt, the bank assumes that the private debt of the president has become the debt of the mercantile company, and induces him to attach the company's name to the renewal note by himself as president, the debt remains as before, the individual debt of the president, and the company is under no obligation to pay the same. Nor is the character of the debt changed by the fact that the renewal note was for $500 more than the one it substituted. And a deed of trust made by the corporation to secure this private debt, is, as to the company's creditors, fraudulent.

*Appeal from St. Louis City Circuit Court.*—HON. P. R. FLITCRAFT, Judge.

AFFIRMED.

E. C. KEHR and W. M. KINSEY for appellant.

(1) The note and deed of trust were executed in due form by the proper officers of the hardware company, pursuant to authority conferred by the board of directors. The trustee was in possession of the stock of goods from the date of the deed of trust, until dispossessed by the sheriff's levy. Plaintiff, therefore, has a complete *prima facie* case. (2) The evidence for the defendant did not tend to overthrow plaintiff's *prima facie* case, but taking all the evidence together, strengthened and confirmed it. The verdict, therefore, is wholly unsupported by the evidence. (3) The $7,000 borrowed in January and February, 1891, were used to pay for goods which were "bodily swept into

the corporation." The inference, therefore, is that the corporation assumed to pay the debt. Bank v. Branch-Crookes Saw Co., 104 Mo. 425. It is not questioned that the additional $500 were borrowed by the corporation.

W. B. HOMER and BEN SCHNURMACHER for respondents.

(1) A conveyance by a corporation to secure the debt of one of its officers is fraudulent and void as to creditors. Nat. Tube Works v. Ring Refrigerating & I. M. Co., 118 Mo. 365. (2) If any part of the consideration of a chattel mortgage is fraudulent and void, it taints the whole transfer and renders the instrument entirely void. State ex rel. v. Hope, 102 Mo. 429; Boland v. Ross, 120 Mo. 208; Nat. Tube Works v. Ring Refrigerating & I. M. Co., 118 Mo. 365; Ball v. Q'Neill, 64 Mo. 388; Cole v. Yancey, 62 Mo. App. 234; Simon-Gregory D. G. Co. v. McMahan, 61 Mo. App. 499. (3) The evidence of the various persons present at the meeting of the stockholders, when the chattel deed of trust in question was executed, was proper evidence as showing the surroundings and circumstances under which the transfer was executed, and the parties to the transaction. In questions of fraud, a very wide latitude is permitted. Smalley v. Hale, 37 Mo. 102; Hopkins v. Williams, 58 Mo. 201; Snell v. Harrison, 104 Mo. 158; Massey v. Young, 73 Mo. 260; Baldwin v. Whitcomb, 71 Mo. 651. (4) The evidence of Ada Plass, and the return of the cashier of the bank made to Bradstreet's agency, show conclusively that neither the hardware company nor the bank regarded the debt, attempted to be secured, as that of the hardware company.

BRACE, P. J.—The defendants are judgment creditors of the W. C. Plass Hardware Company, upon whose stock of merchandise their executions were levied. The relator is the trustee in a deed of trust made by the W. C. Plass

Hardware Company to secure a note for $7,500 to the Southern Commercial & Savings Bank, in possession of and claiming the stock levied on, under said deed of trust.   This is an action on the bond of the defendants to indemnify the sheriff and plaintiff for the seizure and sale of the stock of merchandise under the executions.   The defense set up in the answer is that the deed of trust was made for the purpose of defrauding the creditors of the hardware company, and to secure the individual debt of W. C. Plass.   The facts in the case as disclosed by the evidence are as follows:

For many years prior to 1891 W. C. Plass had been engaged in the retail hardware business in Carondelet, a suburb of St. Louis.   He was in debt but of good credit, and did his banking business with W. B. Quigley & Company, private bankers.   On the thirteenth of January, 1891, he executed his note for $1,000, had the same discounted by Quigley & Company, and the proceeds were placed to the credit of his account with them; and afterward checked out by him in payment of his debts.   On the fourth of February, 1891, a business corporation was formed under the laws of this State by the name of the W. C. Plass Hardware Company, with a capital stock of $40,000, divided into shares of $100 each; the subscribers to the stock being W. C. Plass, three hundred shares; Messrs. Krauss, J. B. Quigley, Andrews, and Street twenty-five shares each.   Mr. Krauss was of the firm of Quigley & Company, Mr. J. B. Quigley was a son of W. B. Quigley, who was also a member of that firm, and Mr. Street was a member of the firm and its cashier, and prepared the articles of incorporation under the direction of Mr. J. B. Quigley.   The capital stock purported to be full paid, but in fact nothing was paid therefor by any of the subscribers except Plass, who for a recited consideration of $40,000 executed a bill of sale dated February 9, 1891, conveying all his goods, wares and merchandise to the company, and thereafter conducted the business just as he

had done before, except that thereafter it was conducted in the name of the W. C. Plass Hardware Company. He acted as president and manager, and Street received a salary of $10 per month for forty-five months as secretary, but doing no act as such, except one hereafter mentioned, and rendering no other service for his salary.

On the eighth day of February, 1891, W. C. Plass executed another promissory note to Quigley & Company for the sum of $6,000, which was thereupon also discounted by them and the proceeds thereof placed to the credit of the said W. C. Plass on his individual account and was thereafter checked out by him in payment of his individual debts.

On the twelfth of February, 1891, Street as secretary, in answer to the following written inquiries of the Bradstreet Mercantile Agency: "What are the liabilities of the Plass Hardware Company? How much, if any, does the corporation owe on bills payable and on accounts payable?" answered in writing—"None." This was the only act performed by Street as secretary, for the company, after the execution of the bill of sale, so far as the uncontradicted testimony shows, except that he kept possession of the secretary's book, and according to the evidence of Miss Ada Plass she opened the books of the hardware company under his directions. It appears that sometime after the twelfth of February, 1891, the style of the firm of W. B. Quigley & Company was changed to Krauss, Quigley & Company, and the latter was thereafter organized as a corporation by the name of the Southern Commercial and Savings Bank, of which Krauss became president and Street cashier.

On the fifth of October, 1891, W. C. Plass executed his individual note for $7,000 payable ninety days after date to the Southern Commercial and Savings Bank, which was discounted by the bank and the proceeds applied to the payment of his two notes aforesaid, held by the bank as successors of Quigley & Company. This note was renewed from

time to time by other notes for the same amount, signed by W. C. Plass, payable to and discounted by the bank, until sometime between May 2 and August 6, 1894, when a note for $7,000 of the same date, tenor and effect as the renewal note of May 2, 1894, but signed "W. C. Plass Hardware Co., W. C. Plass, President," was substituted for that renewal note.

On the sixth day of August, 1894, this note was renewed by another note of that date for the same amount, payable ninety days after date, signed "W. C. Plass Hardware Co., W. C. Plass, President;" for this note on the seventeenth of September, 1894, another note of that date for $7,500 was substituted, payable to the bank, on the seventh of November after date, signed "W. C. Plass Hardware Co., W. C. Plass, President."

On the seventh of November, 1894, this note was renewed by another note of that date payable ninety days after date for $7,500, signed in the same manner. This is the note in question, to secure which the deed of trust was given under which plaintiff claimed the property. The deed of trust executed by the hardware company was dated and recorded on the twentieth day of February, 1895.

It further appears from the evidence that no meeting either of the directors or of the stockholders of the W. C. Plass Hardware Company was ever held from the time of its organization as a corporation until the nineteenth of February, 1895. That at the time of its organization, stock certificates were signed for the four hundred shares—three hundred and fifty-two shares in the name of W. C. Plass, fifty shares in the name of his wife Dorothea Plass, twenty-five shares in the name of Mr. Krauss, and one share each in the name of J. B. Quigley, Andrews and Street. That of these, only the certificates for the three hundred and seventy-two shares to Plass and wife were in fact issued, and they were immediately turned over to Quigley & Company,

as collateral to secure the payment of the aforesaid note of Plass for $6,000 and ever since have remained in possession of the bank pledged as collateral security for all the renewal notes aforesaid; the last of these, the one in question, having been further secured by a second mortgage on the lot and store house of Plass, made by W. C. Plass when the $7,500 note of date September 17, 1894, was substituted for the $7,000 renewal note of that date.

On the nineteenth of February, 1895, in pursuance of an arrangement made by Mr. Kinsey, vice-president and attorney for the bank, and Mr. Plass, a meeting was held at the residence of the latter, between the hours of nine and ten o'clock at night, at which were present, W. C. Plass, his wife Dorothea Plass, his daughter Ada Plass, Charles Bruns, August Meier, Mr. Kinsey and Mr. Street, and at which Mr. Kinsey produced the record book, seal and papers of the corporation and all the certificates of stock, the certificates of Messrs. Krauss, Street, Quigley and Andrews, assigned in blank. Thereupon the assignments were filled out, Krauss' twenty-five shares to Ada Plass, and the other three shares one each to W. C. Plass, Bruns and Meier. Thereupon a stockholder's meeting was held by W. C. Plass, Dorothea Plass, Ada Plass, Bruns and Meier, and they were each elected a director of the company, and thereupon they met as a board of directors, elected W. C. Plass president, Dorothea Plass vice-president, Ada Plass secretary and treasurer, and passed a resolution authorizing the president to execute the deed of trust in question dated and recorded on the twentieth day of February, 1895, as aforesaid. It was accordingly so done, and the plaintiff as trustee took possession of the property, and was so in possession when the executions of the defendants were levied thereon.

The evidence also tends to prove that the bank, Krauss & Company and Quigley & Company were identical, except in name, and composed of the same persons. That the

incorporation of the hardware company was instigated and formed at their instance.    That Plass knew little if anything about corporations, and in respect to this corporation, and his and its indebtedness to them, did just what they told him to do.    That the books of the company when opened, showed no indebtedness by the company.    That the discounts on the renewal notes were paid by Plass, individual checks charged to his individual account, until the note signed by the company by him as president was substituted for his individual note, after which they were paid by checks in the name of the company and charged to the account of the company.    That the consideration of the note for $7,500 of date September 17, 1894, was the note of the same date for $7,000 and a discount of $500 that day made by the bank, the proceeds of which was credited to the account of the hardware company.

The case was submitted to the jury on the evidence under instructions; a verdict returned for the defendants, on which judgment was rendered in their favor, from which plaintiffs appeal.

I.    On the trial exceptions were saved to the admission of evidence and to the instructions, and errors in this regard are here urged for reversal of the judgment.    But in the view we take of the facts in the case it will not be necessary to notice these alleged errors.

It appears from the undisputed facts in the case that $7,000 of the $7,500 note for which the deed of trust was given was the individual indebtedness of W. C. Plass.    That it was originally his individual indebtedness is not even disputed, in argument, as it could not be; but it is contended that this individual indebtedness was assumed by the corporation?    There is no evidence upon which to base such a contention.    It is true, there *is* evidence tending to prove that long after this indebtedness was incurred, and the note therefor    had been many times renewed, in the name of

Plass, and when perhaps it had. become their interest to do so, the officials of the bank *assumed* that the debt of Plass had become the debt of the hardware company, and induced Plass to execute the note in the name of the company in renewal of his own note.   But this assumption had nothing to rest upon beyond the facts stated.   It is argued, however, that upon those facts an inference may be drawn that this individual debt of Plass was assumed by the corporation.   The particular facts upon which the argument is based, being that "the stock of goods was all that Plass had and it was bodily swept into the corporation."   Unfortunately for this argument, the statement goes far beyond the facts proven.   It is not true *that all he had* "was bodily swept into the corporation."   On the contrary, it is much nearer to the truth to say that all he had was swept into the till of the bank; the shares of capital stock, which he received for his stock of goods, at once, as collateral security for his individual note, and his real estate pledged later for the same purpose.   There is absolutely nothing in the facts of the case from which such an inference can be drawn; on the contrary, all the facts are utterly at variance with such an idea, and repugnant to such an inference.   When Plass and the bank sometime between May 2 and August 6, 1894, undertook to unload the individual debt of Plass for $7,000 upon the W. C. Plass Hardware Company, by substituting the note signed in the name of the latter by Plass as president, they did a vain and futile thing.   The debt remained as before, the debt of Plass, for the payment of which the company was under no obligation whatever.   Nor was any obligation incurred therefor by the subsequent substitution of the $7,500 note on the occasion of the $500 discount to the company; $7,000 of the debt evidenced by the note and its renewal note for which the deed of trust was given, continued to be as before, *the individual debt of Plass* to the payment of which the corporation had no right to appro-

priate its assets as it attempted to do by this deed of trust. As against the defendants, creditors of the corporation, this deed of trust was fraudulent, and as to them passed no valid title to the trustee to the goods levied upon by the defendants. The fact that $500 of the note was for an actual indebtedness of the company does not affect the result. [Nat. Tube Works Co. v. Machine Co., 118 Mo. 365; State ex rel. Robertson v. Hope, 102 Mo. 429; Boland v. Ross, 120 Mo. 208; Implement Co. v. Jones, 143 Mo. loc. cit. 283; Cole v. Yancey, 62 Mo. App. 234; Simon-Gregory Dry Goods Co. v. McMahan, 61 Mo. App. 499.] And since upon the undisputed facts in the case, the court might well have directed the jury to return a verdict for the defendants, there is no error for which the judgment should be reversed. The judgment is affirmed. All concur.